BOARD OF TRUSTEES OF SCHOOLS FOR INDUSTRIAL EDUCATION IN THE CITY OF HOBOKEN

*v.*

THE MAYOR AND COMMON COUNCIL OF THE CITY OF HOBOKEN AND THE TRUSTEES OF THE FREE PUBLIC LIBRARY OF THE CITY OF HOBOKEN.

[Decided November 8th, 1905.]

Certain donors offered to contribute funds for the erection of a free city public library building, provided that accommodations therein be provided for the city's industrial education department, and that the city would raise the balance of the funds necessary to erect the building. This offer was accepted by a resolution of the city council, and thereafter the site was purchased by the donors and conveyed to the city by a plain bargain and sale deed containing no restrictions.—*Held*, (1) that the city took title, under such deed, on the trusts contained in the offer and acceptance; and (2) that a bill to regulate the use of such a building is within the jurisdiction of equity to establish and enforce a charitable use.

*4 Robbins.*        School Trustees of Hoboken *v.* Hoboken.

Heard upon bill, answers, replication and proofs in open court.

*Messrs. Black & Drayton,* for the complainants.

*Mr. James F. Minturn,* for the defendants.

GARRISON, V. C.

This is a bill filed by the board of trustees of schools for industrial education in the city of Hoboken against the mayor and common council of the city of Hoboken and the trustees of the free public library of the city of Hoboken.

The city is, of course, a municipal corporation created by the legislature, and the other parties are each public corporations of this state created and existing under appropriate legislation.

The subject-matter of dispute is the regulation of the use of a building which was erected under the following circumstances:

On the 26th day of March, 1895, the following letter was sent and received:

"HOBOKEN, N. J., March 26th, 1895.

*"Edward Russ, Esq., Chairman on Sites, Free Public Library:*

"DEAR SIR—On behalf of my mother, Mrs. Martha Stevens, and my sister-in-law, Mrs. John Stevens, and myself, I beg to acquaint you with the fact that we are willing to donate to the city of Hoboken, in land and cash, a sum not exceeding $26,000 towards the erection of a free public library building by the free public library trustees of the city of Hoboken, providing that accommodations at the same time be given for the proper accommodation of the industrial education department of the city of Hoboken, and providing that the city of Hoboken will raise the balance of the amount necessary to erect such buildings as may meet our approval for the above object, and providing that this offer must be accepted before the 1st day of July of this year. And that the deed of conveyance shall contain such restrictions as will insure the accomplishment of the above-named objects. The site of said building to be selected by the library trustees.

"Yours respectfully,

"RICHARD STEVENS."

Thereupon the city took action as follows:

City council received a report, dated April 24th, 1895, as follows:

"*To the Honorable the Mayor and Council of the city of Hoboken:*

"GENTLEMEN—Your special committee appointed at the request of the board of trustees of the free public library to confer with the members of the said board in regard to the communication of Mrs. Martha Stevens, Mrs. John Stevens and Mr. Richard Stevens to the board of trustees of the free public library, offering to donate land or cash to the value of $26,000 for the purpose of erecting a free public library building and school for manual training, would respectfully report that they have had a conference with the donors, committee of the board of trustees of the free public library and a committee of the board of the manual training school of industrial education, and would recommend the adoption of the following :

"*Resolved*, That the generous and public-spirited offer of Mrs. Martha Stevens, Mrs. John Stevens and Mr. Richard Stevens be accepted under the conditions and restrictions mentioned in their communication dated March 26th, 1895, and presented to this council March 27th, 1895.

"J. H. TIMKEN,
"EDW. OFFERMAN,
"A. STURKEN,
"*Committee.*"

and passed the resolution just quoted.

Thereafter a site was selected by the library trustees and the land was purchased by Mrs. Stevens, and by a deed dated the 7th of January, 1896, was conveyed to the mayor and council of the city of Hoboken. This deed is a plain bargain and sale deed, with no provisions or restrictions. Under these circumstances I find that the city took this title upon the trusts expressed in the writings above quoted.

Plans were then prepared under the joint supervision of the library trustees and the school trustees, and those plans were submitted to the donors and were by them approved. These plans provided for a building which, although under the one roof, should practically contain two separate structures, one for the use of the library and one for the use of the industrial school.

The entrance to the library part of the building is upon one street and that to the industrial school is upon another street.

The various rooms on the plans have the purposes for which they are intended indicated by appropriate language, most of the rooms intended for the use of the school being marked "class-room" and those for the use of the library being marked "stack-room," or similar descriptive terms.

There is one room upon the top floor of the building which is marked "assembly-room."

There is no contention before me in this suit as to the use of any other rooms than the one in the basement marked on the plans "classroom," and the room on the top floor marked "assembly-room."

The donors paid $17,719.40 for the land and paid over the balance in cash. The remainder of the cost was raised upon bonds issued under legislative authority.

The building was built according to the plans and has since been occupied by the library trustees in their portion and by the industrial school trustees in their portion.

Neither body has had occasion to use the "assembly-room," excepting at the dedicatory exercises, and upon that occasion they joined in its use.

The room marked "classroom" in the basement has not been put to practical use by either party until just before the beginning of this suit, the library trustees having used it as a store-room.

The school trustees now need this room for their school purposes. Their right to use this room is disputed by the library trustees. Each side asserts the right to use the "assembly-room," and the right of each is denied by the other.

On the 12th of November, 1903, a deed was executed by the proper officers of the city of Hoboken conveying the title to this property to the trustees of the free public library.

This deed was based upon a resolution authorizing it, passed by the city council, which resolution was, upon *certiorari*, set aside by the supreme court.

The opinion of the court will be found in *Keuffel* v. *Mayor, &c., of Hoboken,* 71 *N. J. Law* (*42 Vr.*) *518.*

I am of opinion that this bill should be considered as a bill to establish and enforce a charitable use, which, of course, is a well-recognized head of equity jurisprudence.

"The primitive and inherent powers of a court of equity in this domain are *sui generis* and of a very extensive character * * * in full vigor in the hands of the chancellor of this

state. *Chief-Justice Beasley in Hesketh* v. *Murphy, 36 N. J. Eq. (9 Stew.) 307 (Court of Errors and Appeals, 1882).*

No special technical words are necessary to establish a charitable use or trust.

If the words of donation specify some definite purpose which is regarded by the law as charitable, or for some general purpose which the law regards as charitable, that is sufficient. *5 Am. & Eng. Encycl. L. (2d ed.) 912 et seq.*

This donation was clearly a gift for charitable uses.

A library has been held to be the proper subject of a charitable use. *Brown* v. *Pancoast, 34 N. J. Eq. ('7 Stew.) 321 (Chancellor Runyon, 1881); George* v. *Braddock, 45 N. J. Eq. (18 Stew.) 757 (Court of Errors and Appeals).*

As have schools. *Stevens* v. *Shippen, 28 N. J. Eq. (1 Stew.) 487; Green* v. *Blackwell, 35 Atl. Rep. 375; Hyde's Executors* v. *Hyde, 64 N. J. Eq. (19 Dick.) 9.*

Municipal corporations and public corporations are held to have power to take property for charitable uses, unless disenabled by positive legislation. *Dill. Mun. Corp. (4th ed.) 661 et seq. §§ 566 (436) et seq.; 5 Am. & Eng. Encycl. L. (2d ed.) 922.*

Neither the municipal corporation nor the two public corporations involved in this suit are so disenabled by any legislative or constitutional prohibition brought to my attention or within my knowledge.

I therefore conclude that by the donation, its acceptance, and the subsequent acts of the parties, a charitable use was created, and the building erected is for the use of the free public library and the industrial school, in accordance with the intention of all of the parties as indicated upon the plans.

It only remains, then, to determine the terms, limitations or conditions of the trust.

In this case these are readily ascertainable from the written papers expressing the trust, and the joint and mutual actions of the parties.

The building was intended to be used jointly in its separable parts by the free public library and the industrial school, and

with respect to every part of the building, excepting the "assembly-room," its intended use was indicated in advance, and was agreed upon by all the parties in interest.

With respect to the "assembly-room," I find that it was intended to be used by each of the two corporate occupants of the building as their necessities required; that neither has an exclusive right, but each has a right.

The "classroom" in the basement was undoubtedly intended for the school, and to the extent, at least, that it is required for school purposes is within the exclusive control of the school trustees.

I will advise a decree to define and enforce the charitable trust in accordance with the above-expressed views.